IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO ARAUZ,<br><br>      Petitioner,<br><br>  vs.<br><br>GARY SWARTHOUT,[1] Warden (A),<br>California State Prison, Solano,<br><br>      Respondent. | No. 2:08-cv-00469-TMB<br><br>MEMORANDUM DECISION |

  Petitioner Ricardo Arauz, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Arauz is currently in the custody of the California Department of Correctional Services, incarcerated at the California State Prison, Solano. Respondent has answered and Arauz has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

  In March 1989 Arauz was convicted on a plea of guilty in the Los Angeles County Superior Court of one count of murder in second-degree (Cal. Penal Code, § 187). The trial court sentenced Aruaz to an indeterminate prison term of 15 years to life. Arauz does not challenge his conviction or sentence in these proceedings.

  In March 2007 Arauz appeared at a parole suitability hearing before the California Board of Parole Hearings, which, after finding him unsuitable for parole, denied him parole for two years. Arauz timely filed a petition for habeas corpus relief in the Los Angeles County Superior Court, which denied his petition in an unpublished, reasoned decision. The California Court of Appeal, Second Appellate District, summarily denied Arauz's petition for habeas corpus relief without opinion or citation to authority. The California Supreme Court, in turn, summarily

---

  [1] Gary Swarthout, Warden (A), California State Prison, Solano, is substituted for D. K. Sisto, Warden, California State Prison, Solano. Fed. R. Civ. P. 25(d).

denied review without opinion or citation to authority on February 13, 2008.  Arauz timely filed his petition for relief in this court on February 27, 2008.

After the pleadings were complete and the issues joined, this Court stayed further proceedings in this action pending decision by the en banc panel of the United States Court of Appeals for the Ninth Circuit in *Hayward*.[2]  The Ninth Circuit has issued its en banc opinion in *Hayward*;[3] therefore, the Court terminates the stay and decides the case.

The facts of the underlying commitment offense, as summarized by the Los Angeles Superior Court, are as follows:

> The record reflects that on January 9, 1988, [Arauz] shot and killed his estranged common law wife after a heated argument regarding child custody and other domestic matters.  [Arauz] and the victim had separated approximately one month earlier.  He accused her of having an affair and deserting him and their children.  On the day of the murder, [Arauz] had been drinking when he called the victim and requested that she come to his sister's house to discuss the custody issues.  [Arauz] had been living with his sister since the separation.  When she arrived at the residence, [Arauz] and the victim entered the bedroom and began arguing.  shot the victim three times.  As [Arauz] left the residence, he told his 13-year old nephew to call the paramedics and the police.[4]

## II.  GROUNDS RAISED/DEFENSES

Price raises two grounds for relief:  (1) the Board violated the contractual plea agreement by denying his parole based upon fact he had not admitted; and (2) denial of parole was not based upon reliable evidence in the record.  Respondent asserts no affirmative defenses.[5]

---

[2] *Hayward v. Marshall*, 512 F.3d 536, *reh'g en banc granted*, 527 F.3d 797 (9th Cir. 2008), Case No. 06-55392.

[3] *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc).

[4] Docket No. 8-2, p. 2.

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[6] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412.

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

be objectively unreasonable, not just incorrect or erroneous.[10]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[11]  "[A]bsent a specific constitutional violation, federal habeas corpus review of [state court] error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a federal habeas proceeding, the standard under which this court must assess the prejudicial impact of constitutional error in a state-court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[13]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, Arauz has the burden of showing by a preponderance of the evidence that he merits habeas relief.[14]

In applying this standard, this court reviews the last reasoned decision by the state court.[15] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner

---

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[15] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

rebuts this presumption by clear and convincing evidence.[16] This presumption applies to state trial courts and appellate courts alike.[17]

## IV.  DISCUSSION

<u>Ground 1:  Breach of Plea Agreement</u>.

Arauz argues that the Board violated and was an unreasonable application of clearly established federal law by relying on facts related to a higher degree of offense than the State agreed to under the plea agreement to extend his term of agreement under the sentencing range for a agreed upon offense.  The Los Angeles Superior Court rejected Arauz's arguments, holding.

> Finally, the court rejects [Arauz's] contention that the denial of parole following a finding of unsuitability by the Board violates the terms of his plea agreement.  [Arauz] agreed to a bargain that subjected him to a life sentence.  An indeterminate sentence is, in legal effect, a sentence for the maximum term unless the parole authority acts to fix a shorter term.  See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1097-1098; *In re Honesto* (2005) 130 Cal. App. 4th 81, 92-93.  The relevant statutes and regulations that govern parole clearly do not entitle a prisoner to release on parole, regardless of the amount of time served, unless [Arauz] is found suitable for parole.  *See In re Honesto,* (2005) 130 Cal. App. 4th 81, 92-93.[18]

That a plea agreement is a contract that must be honored by the state is well settled.[19]  In this case, however, Arauz reads his "contract" terms incorrectly.  The proper interpretation and effect of the agreement between the State of California and Arauz in this case is a matter governed by California contract law.[20]  What Arauz received in exchange for his guilty plea was

---

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[18] Docket No. 8-2, pp. 4–5.

[19] *See Santobello v. New York*, 404 U.S. 257, 262–63 (1971).

[20] *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

a sentence of 15 years to life, with a possibility of parole at some point after he had served his minimum term. Although the plea colloquy is not included in the record before this court, Arauz does not allege that there was any promise, actual or implied, of when or under what terms or conditions he might be given parole, or, for that matter, that he would be granted parole at all at any time. Nor does Arauz argue that any such agreement, if one did exist, which is doubtful,[21] would be enforceable under California law.

Under California law, the Board "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[22] To the extent that Arauz may be relying on *Apprendi* and its progeny,[23] suffice it to say that the Supreme Court, has never held that the principle in *Apprendi* applies in the parole context. "[A]bsent a specific constitutional violation, federal habeas corpus review of [state proceedings] is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[24] "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[25] Having failed to raise an issue of constitutional dimension, Arauz is not entitled to relief under his first ground.

---

[21] *See In re Lowe*, 31 Cal. Rptr.3d 1, 13 (Cal. App. 2005) (holding that when a defendant enters a guilty plea, he has no reasonable expectation regarding the identity of the person or persons who would exercise discretion in evaluating his suitability for parole, or that the person or persons would not change over time, citing *Rosenkrantz*, 59 P.3d at 193).

[22] *In re Dannenberg*, 104 P.3d 783, 803 (Cal. 2005) (citing *In re Rosenkrantz*, 59 P.3d 174, 219 (Cal. 2002)).

[23] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004).

[24] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[25] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

Ground 2:  Insufficient Reliable Evidence.

Arauz contends that the decision of the Board finding him unsuitable for parole was not based upon reliable evidence in violation of the "some evidence" standard in *Superintendent v. Hill*.[26] In rejecting Arauz's arguments, the Los Angeles Superior Court held:

> The Board found [Arauz] unsuitable for parole after a subsequent parole consideration hearing held on March 13, 2007.  [Arauz] was denied parole for 2 years. The Board concluded that [Arauz] was unsuitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  The Board based its decision on several factors, including the commitment offense.
> In reaching its decision, the Board considered several favorable factors, including [Arauz's] exemplary prison record, (no CDC 115's), his successful particpation in numerous self-help programs, including continuous participation in NA and AA throughout his incarceration, a positive psychological report, which assessed a low risk of dangerousness if no alcohol is involved, multiple laudatory chronos, and verifiable residential plans and job offers for El Salvador, the country to which [Arauz] will likely be deported. However, the Board found that these positive factors did not outweigh the factors showing unsuitability.
> The Board found that the commitment offense was "especially cruel and callous" in that the offense was carried out in a dispassionate and calculated manner.  Cal. Code Regs., tit. 15, § 2402(c)(I)(B).  The court finds that there is some evidence in the record to support a finding that the offense was carried out in a dispassionate and calculated manner.  On the day of the shooting, [Arauz] armed himself with a loaded weapon and shot the victim three times at close range.  The first shot struck the victim in the knee, the second hit the victim in the back as she was falling, a wound that pierced her heart, and the third shot struck the victim in the back as she was lying on the floor.  The victim, who was unarmed and presented no threat to [Arauz], was particularly vulnerable.  Moreover, [Arauz] fired the weapon with disregard to the safety of his nephew and his daughters who were present in the residence.  Thus, the Board's finding that the commitment offense was carried out in an especially callous manner, a factor tending to show unsuitability for parole, is supported by some evidence.
> Additionally, the Board noted that [Arauz] could benefit from completing a vocation and earning his GED in order to enhance his marketable skills once he is released from prison.  Realistic plans for release and marketable skills are factors the Board may consider in determining suitability for parole.  Cal. Code

---

[26] 472 U.S. 445 (1985).

Regs., tit. 15, § 2402(d)(8). In this respect, the Board found that although [Arauz] had been working in the PIA Laundry for a substantial period, he had not yet achieved a vocation, nor had he achieved his GED, something that prior Boards had recommended. Such a finding is supported by the record.

The Board also cited [Arauz's] social history as a factor in its decision, stating "[y]ou certainly do have instability contributed by an early age, by early age drinking of alcohol." With respect to social history, the regulations provide that stable relationships with others favor parole, while a "history of unstable or tumultuous relationships with others" weighs against parole. Cal. Code Regs., tit. 15, § 2402(c)(3) and (d)(2); *In re DeLuna* (2005) 126 Cal. App. 4th 585,595. While there is some evidence that [Arauz] had an alcohol problem, there is no evidence that it contributed to a history of unstable or tumultuous relationships with others.

To the contrary, the record contains evidence that [Arauz] has been able to maintain stable relationships with others. The record contains little information about defendant's family background prior to coming to the United States in 1977 other than the fact that he was one of eight children and grew up in an economically poor family in EI Salvador. However, upon arriving in the United States, he was able to find and maintain steady and gainful employment with Jaffra Cosmetics from 1978 through 1988, receiving a promotion to lead man in the distribution department. John Boltz, the National Distribution Manager, described him as hard working and having a good rapport with fellow employees. Moreover, he was in a relationship with the victim, his common law wife, for nearly 10 years. They had two children together, which he supported, and a daughter from a prior relationship also lived with them. The August 2000 psychological evaluation report found that even though [Arauz] admitted to drinking heavily for years before the commitment offense, this had not caused him to become irrational or violent in his manner of relating to other people. Other than the commitment offense, [Arauz] has no history of violence. [Arauz] has no juvenile record and his adult record, other than the commitment offense, consists of two DUI convictions.

The Board's decision may be upheld, despite a flaw in its findings, if it is clear it would have reached the same decision even absent the errors. See *In re Dannenberg* (2005) 34 Ca1.4th 1061, 1100. Here, the record supports a finding that the Board was primarily concerned with the circumstances of the commitment offense and [Arauz's] need to learn a marketable skill in order to improve his ability to go out into society and make a substantial living. Thus, the court finds some evidence to support the Board's finding that [Arauz] poses an unreasonable risk of danger to society and, is therefore, unsuitable for parole.

The court also finds that the Board did not err in denying [Arauz] parole for a period of two years. The Board must articulate reasons that justify a postponement, but those reasons need not be completely different from those justifying the denial of parole. See *In re Jackson* (1985) 39 Cal.3d 464, 479. The

>Board indicated that [Arauz] was denied parole for two years because of the nature of the commitment offense and [Arauz's] need to learn a trade and obtain his GED in order to enhance his marketable skills. The court finds that these reasons are sufficient to support a finding that [Arauz] is unlikely to be granted parole within the next two years.[27]

Before this court, Arauz specifically argues that the Board impermissibly relied upon the nature of the commitment offense and failed to properly apply the two-step approach mandated by the Ninth Circuit.[28]  Unfortunately for Arauz, in *Hayward*, the Ninth Circuit eviscerated his arguments.  In this case, this court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[29]  Consequently, this court must canvas and apply California law to the facts in the record.  Under California law "some evidence" of future dangerousness is a *sine qua non* for denial of parole.[30]  As the Ninth Circuit noted:

>As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." (Footnote omitted)  There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." (Footnote omitted).  The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. (Footnote omitted.)  Thus, in California,

---

[27] Docket No. 8-2, pp. 2–4.

[28] Citing *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003) and *Irons v. Carey*, 505 F.3d 536 (9th Cir. 2007).

[29] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[30] *In re Lawrence*, 190 P.3d 535, 549 (Cal. 2008); *In re Shaputis*, 190 P.3d 573, 582 (Cal. 2008).

the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety." (Footnote omitted.)[31]

Under California law, a parole release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the *public safety* requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed . . . ."[32] "The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole."[33] The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[34] The Board "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[35] "[T]he statutory and regulatory mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness."[36] Where, however, the record also contains evidence

---

[31] *Hayward*, 603 F.3d at 562 (omitted footnotes are pinpoint citations to *Lawrence*) (internal alteration in the original).

[32] Cal. Penal Code § 3041(b) (emphasis added); *Lawrence*, 190 P.3d at 546; *see Rosenkrantz*, 59 P.3d at 202–03.

[33] *Rosenkrantz*, 59 P.3d at 222.

[34] *Dannenberg,* 104 P.3d at 786–87, 802–803; *see Rosenkrantz*.

[35] *Id.* at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[36] *Lawrence*, 190 P.3d at 553.

of other factors relevant to showing unsuitability for parole, the aggravating circumstances of the crime reliably may continue to predict current dangerousness even after many years of incarceration.[37]

The California Supreme Court has provided substantial guidance on the factors to be considered in applying these general principles.

> Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the Board in carrying out the mandate of the statutes.[FN13]  This regulation is designed to guide the Board's assessment of whether the inmate poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. (Regs., § 2402, subd. (a).)[FN14]  The regulation also lists several circumstances relating to unsuitability for parole[FN15]—such as the heinous, atrocious, or cruel nature of the crime, or an unstable social background; and several circumstances relating to *suitability* for parole—such as an inmate's rehabilitative efforts, demonstration of remorse, and the mitigating circumstances of the crime.[FN16]  (Regs., § 2402, subds. (c), (d).)  Finally, the regulation explains that the foregoing circumstances "are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subds. (c), (d).) [. . . .]
>
> > [FN13.] Petitioner's parole suitability is governed by Title 15, section 2402, which we addressed in *Rosenkrantz, supra,* 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174—a discussion excerpted in substantial part below.  In the companion case of *Lawrence, supra,* 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, the inmate's parole suitability is governed by Title 15, section 2281, which provides parole consideration criteria and guidelines for murders committed prior to November 8, 1978.  The two sections are identical.
> >
> > [FN14.] These factors include "the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

---

[37] *See Shaputis*, 190 P.3d at 584–85.

Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." (Regs., § 2402, subd. (b).)

[FN15.] Unsuitability factors are: (1) a commitment offense carried out in an "especially heinous, atrocious or cruel manner"; (2) a "[p]revious [r]ecord of [v]iolence"; (3) "a history of unstable or tumultuous relationships with others"; (4) "[s]adistic [s]exual [o]ffenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "[t]he prisoner has engaged in serious misconduct in prison or jail." (Regs., § 2402, subd. (c)(1)-(6).) This subdivision further provides that "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subd. (c).)

Factors supporting a finding that the inmate committed the offense in an especially heinous, atrocious, or cruel manner include the following: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. (Regs., § 2402, subd. (c)(1).)

[FN16.] Suitability factors are: (1) the absence of a juvenile record; (2) "reasonably stable relationships with others"; (3) signs of remorse; (4) a crime committed "as the result of significant stress in [the prisoner's] life"; (5) battered woman syndrome; (6) the lack of "any significant history of violent crime"; (7) "[t]he prisoner's present age reduces the probability of recidivism"; (8) "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (9) the inmate's "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." (Regs., § 2402, subd. (d)(1)-(9).)

"[T]he governing statute provides that the Board *must* grant parole *unless* it determines that *public safety* requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. (Pen.Code, § 3041, subd. (b).) And as set forth in the governing regulations, the Board must set a parole date for a prisoner unless it finds, in the exercise of its judgment after considering the circumstances enumerated in section 2402 of the regulations, that the prisoner is unsuitable for parole. Accordingly, parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole

in light of the circumstances specified by statute and by regulation." (*Rosenkrantz, supra,* 29 Cal.4th at p. 654, 128 Cal.Rptr.2d 104, 59 P.3d 174, Italics added.)[38]

"[T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board]. . . . It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the [Board's] decision reflects *due consideration of the specified factors* as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision."[39]

This court does not re-weigh the evidence or substitute it's discretion for that of the Board. Under California law, judicial review of a decision denying parole is "extremely deferential."[40] It is through this doubly deferential lens that this Court reviews the decision of the Los Angeles County Superior Court. In this case, the Board determined that, in addition to the nature of the underlying commitment offense, his marketable skills were deficient. Based upon the record before it, applying *Rosenkrantz, Dannenberg, Lawrence* and *Shaputis*, this court cannot say that the decision of the Los Angeles Superior Court affirming denial of parole was contrary to, or involved an unreasonable application of California law or was based on an unreasonable determination of the facts in light of the evidence. Arauz is not entitled to relief under his second ground.

## V. CONCLUSION AND ORDER

Arauz is not entitled to relief under any ground raised in the petition. Accordingly,

---

[38] *Shaputis*, 190 P.3d at 582–83 (emphasis in the original).

[39] *Id.* at 585 (emphasis in the original) (quoting *Rosenkrantz*, 59 P.3d at 218).

[40] *Rosenkrantz*, 59 P.3d at 210.

**IT IS ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability.[41]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  See Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter final judgment accordingly.

Dated:  June 22, 2010.

                                                    s/ Timothy M. Burgess
                                                    TIMOTHY M. BURGESS
                                                    United States District Judge

---

[41] 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).